# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**TERESA O. ESPINOSA OBO**
**XAVIER R. ORTIZ (minor),**

    **Plaintiff,**

vs.                                                                                     Civ. No. 01-309 MCA/WWD

**JO ANNE B. BARNHART**[1]**,**
**Commissioner of Social Security,**

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for Award of Benefits, or in the Alternative, to Remand for a Rehearing ("Motion"), filed November 5, 2001**[Doc. 9]**. The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits. Plaintiff, Xavier Ortiz, who was ten years old at the time of the hearing, alleges a disability which commenced January 1, 1995 due to seizure disorder, Tourette's syndrome and depression. Tr. at 48. The application for benefits was filed on behalf of Plaintiff by his mother, Teresa Espinosa.

    2. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, at which the Plaintiff appeared pro se, the Administrative Law Judge ("ALJ") denied the application, concluding that Plaintiff is not

---

[1] Jo Anne B. Barnhart was appointed Commissioner of Social Security, effective November 9, 2001. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Jo Anne B. Barnhart should be substituted for Acting Commissioner Larry G. Massanari as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

disabled. The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's finding that Plaintiff has no "marked and severe" impairment is inconsistent with the regulations, (2) the ALJ's findings with regard to Plaintiff's concentration, persistence and pace and social and personal functioning are not supported by substantial evidence and are contrary to law, and (3) the ALJ did not provide an explanation for her findings that Plaintiff's impairments are less than marked. See Pl.'s Mem. at 4, 8-9.

5. An individual under the age of 18 is considered disabled if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C) (as amended by P.L. 104-193, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, § 211), (superseding Sullivan v.Zebley, 493 U.S. 521 (1990)). If the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled. See 20 C.F.R. § 416.924(d)(2)(1997).

6. There are three steps in the evaluation process, involving determinations as to (1) whether the child is engaging in substantial gainful activity, (2) whether the impairment is severe, and (3) whether the impairment meets, or medically or functionally equals, a listed impairment. See 20 CFR § 416.924.

7. An impairment is functionally equivalent to a listed impairment if a claimant has an extreme limitation in one area of functioning or marked limitations in two or more areas of functioning. 20 C.F.R. § 416.926a(b)(2). The areas of functioning to be addressed in a finding of functional equivalence include: cognition/communication, motor, social, personal, and concentration, persistence or pace. 20 C.F.R. § 926a(c)(4).

8. Plaintiff ("Xavier"), Plaintiff's mother ("Ms. Espinosa"), and a medical expert, Man-Tai Lam, MD, testified at the hearing. Dr. Lam testified that in addition to, or in association with, Tourette's syndrome, Xavier probably has obsessive compulsive personality disorder ("OCD") and also meets the definition of attention deficit hyperactivity disorder ("ADHD"). Tr. at 224. Xavier has been treated with a variety of medications for his condition, including Tofranil, Ritalin, Adderall, and Prozac. At the time of the hearing, Xavier was apparently taking Wellbutrin and Tegretol. Tr. at 86, 204, 225-26. On August 14, 1998, one of Plaintiff's treating physicians, Don Johnson, MD, stated that he and a consulting psychiatrist, Helen Johnson, MD, were in the process of modifying Xavier's medication regime. Tr. at 182.

9. In her request for a hearing, Ms. Espinosa stated that Xavier continued to have behavioral and mental problems, including hyperactivity, crying, obsessive eating, nervousness, sleep problems and facial tics. Tr. at 32. She indicated that the physicians were changing Xavier's medication, which resulted in "some improvement, but [with] side effects." Id. At the

3

hearing, Ms. Espinosa testified that Xavier is "very hyper . . . . [and] hard to control." Tr. at 218. She stated that Xavier has problems sleeping at night and "doesn't let me sleep." Id. Xavier is nervous, constantly bites his nails and "everything he's thinking is right into his mouth." Id. Ms. Espinosa tries to keep Xavier away from other children because she is concerned about fighting. Tr. at 220. Ms. Espinosa testified that Xavier was "doing pretty good in school" although he has problems remembering what he has read and rushes through his work. Tr. at 221-22.

### I. *The ALJ's Severity Finding*

10. Plaintiff asserts that the ALJ's finding that Xavier does not have a "marked and severe" impairment or combination of impairments is inconsistent with the regulations. Plaintiff apparently argues that such a finding is an error at step two of the sequential evaluation. See Pl.'s Mem. [Doc. 10] at 5 (stating that the severity inquiry is "a threshold inquiry"). However, I find that Plaintiff has misconstrued the ALJ's finding.

11. Defendant correctly points out that, at step two, the ALJ found that Xavier had several impairments that have "more than a minimal effect on [Xavier's] abilities."[2] Tr. at 16. The ALJ then proceeded to discuss whether Plaintiff's impairments met or equaled any listed impairments under sections 112.11, 111.03 and 112.04. Tr. at 16. The ALJ's language and her consideration of whether Plaintiff's impairments met or equaled a listing indicate that she proceeded past step two in the sequential evaluation process. See Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (citing Moon v. Bowen, 810 F.2d 472 (5th Cir.1987)) (finding that a court must infer that a severe impairment was found where the ALJ proceeds past the impairment

---

[2] Impairments that cause "no more than minimal functional limitations" are not "severe impairment(s) and are, therefore, not disabl[ing]." 20 CFR § 416.924(c).

step).

12.   The ALJ concluded that Plaintiff "does not have an impairment or combination of impairments which is 'marked and severe.'" Tr. at 18.  This language, used in the ALJ's final finding, simply reflects the regulatory language used to describe an impairment that meets or equals a listed impairment.  See 20 CFR § 416.924(d) ("An impairment(s) causes <u>marked and severe</u> functional limitations if it meets or . . . equals . . . a listed impairment.") (emphasis added); <u>Nelson v. Apfel</u>, 131 F.3d 1228, 1235 (7th Cir. 1997) (distinguishing the word 'severe' in the phrase 'marked and severe functional abilities' from those occasions when the agency uses 'severe' to mean 'other than minor').  Plaintiff's argument on this alleged error is without merit.

## II./ III.   *The ALJ's Findings Regarding Plaintiff's Concentration, Persistence or Pace and Social and Personal Functioning*

A.   <u>Concentration, Persistence and Pace</u>

13.   The functional area of concentration, persistence or pace relates to the "[t]he [claimant's] ability or inability to attend to, and sustain concentration on, an activity or task, such as playing, reading, or practicing a sport, and the ability to perform the activity or complete the task at a reasonable pace." 20 CFR § 416.926a(c)(vi).

14.   The ALJ's discussion of this functional area consists, in its entirety, of the following:

> Xavier has some problems with concentration and remaining on task (Exs. 7E, 11E and 15F) [tr. at 67, 82, and 181]. However, he is able to perform his school work with help. His [sic] does well in school (Ex. 14F) [tr. at 178]. The latest evaluation indicates a mild impairment, only in this area (Ex. 15F) [tr. at 181]. I conclude that he has a less that [sic] marked impairment in the area of concentration, persistence and pace. Tr. at 18.

15.   The ALJ relied on the evaluations of Plaintiff's second grade and third grade

5

teachers (Exs. 7E, 11E), and apparently all of Dr. Don Johnson's records requested by Disability Determination Services (Ex.15F)³ to conclude that Plaintiff has "some problems" with concentration and remaining on task. However, the ALJ failed to point out the specific information in these documents that led to this finding. Nor did the ALJ discuss the nature and degree of these "problems." Finally, the citation referring to all of Dr. Johnson's records provides little assistance to the Court in its attempt to determine the basis for the ALJ's finding.

16.     The ALJ cited a letter written by Dr. Helen Johnson (Ex. 14F, tr. at 178) to support her conclusion that Plaintiff "does well in school." In that letter, Dr. H. Johnson commented that Xavier "is apparently getting good grades in school, although he was described as being very 'spacy' during first grade, and repeated that grade." Tr. at 179. Thus, the ALJ presumably equated Plaintiff's good grades with "doing well" in school. The intent in determining the existence of "deficiencies of concentration, persistence, or pace . . . , is to identify the child who cannot adequately function in primary school because of a mental impairment." 20 CFR Pt. 404, Subpt. P, App. 1, 112.00(C)(3). The regulations caution, however, that while "grades and the need for special education placement are relevant factors which must be considered in reaching a decision . . . , they are not conclusive." Id. (emphasis added). Because the ALJ failed to adequately discuss all of the relevant evidence in this area, it is impossible for the Court to ascertain whether the ALJ properly considered grades as one relevant factor, or improperly considered grades as conclusive evidence that Plaintiff is not markedly impaired in this area.

---

          ³      Ex. 15F corresponds to tr. at 181, which is the adjudicator's April 21, 1998 request for Dr. Don Johnson's medical records from Gila Monster Pediatrics. The ALJ did not highlight any specific document(s) among those submitted in response to the adjudicator's request.

6

17. The ALJ cited the "latest evaluation," presumably contained in Dr. Johnson's medical records (15F, tr. at 181), as support for the finding that Plaintiff has a "mild impairment only" in this area. However, nothing in Dr. Johnson's most recent evaluation[4] supports a finding that Xavier was "mildly impaired" in this area. In that letter, Dr. Johnson reported that "[a]s far as mental impairment, [Xavier] is adversely affected . . . in his ability to understand, concentrate, and remember and carry out instructions. Specifically, [Xavier's] distractibility . . . has adversely affected his ability to make normal progress in school." Tr. at 182. Dr. Johnson stated that Plaintiff is receiving counseling and medication and "has responded somewhat to medical intervention." Id. However, Dr. Johnson's evaluation did not indicate the degree to which Xavier's mental impairment adversely affects his abilities, nor the degree to which he has responded to medical intervention. Thus, Dr. Johnson's cover letter of August, 14, 1998 is not substantial evidence for a finding that Plaintiff has only a mild impairment in the area of concentration, persistence, or pace.

18. Finally, I find that the ALJ also failed to meet her burden of ensuring the development of an adequate record, particularly when, as in this case, Plaintiff was unrepresented at the hearing. The ALJ noted that Xavier had been detained in the first grade. Tr. at 16. However, despite some evidence that Plaintiff was detained for problems related to concentration[5], the ALJ failed to discuss this evidence in her decision. Indeed, during the hearing,

---

[4]      Exhibit 15F-2, corresponding to tr. at 182, is a cover letter from Dr. Johnson, dated August 14, 1998, that includes his "most recent evaluation and contact with the family."

[5]      On May 6, 1996, Dr. Johnson noted that Plaintiff was "held back last year" apparently due to "sloppy work at school-[because he was] not concentrating, nervous, inattentive, etc." Tr. at 91.

the ALJ declined to explore the reasons for Plaintiff's detention, despite Ms. Espinosa's attempt to address the issue.[6] The basic duty of the ALJ to ensure that an adequate record is developed during the disability hearing is heightened when the claimant is unrepresented. Henrie v. United States Dep't of Health & Hum. Servs., 13 F.3d 359, 360 (10th Cir. 1993). I find that the ALJ failed to meet this burden when she declined to explore the circumstances of Plaintiff's detention and denied Ms. Espinosa an opportunity to present testimony regarding the same.

    B.    <u>Social Functioning</u>

19.    The regulations generally describe the area of social functioning as:

[t]he ability or inability to form and maintain relationships with other individuals and with groups; e.g., parents, siblings, neighborhood children, classmates, teachers. Ability is manifested in responding to and initiating social interaction with others, sustaining relationships, and participating in group activities. It involves cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity appropriate to a child's age. Ability is also manifested in the absence of inappropriate externalized actions (e.g., running away, physical aggression . . . ), and the absence of inappropriate internalized actions (e.g., social isolation, avoidance of interpersonal activities, mutism).

20 CFR § 416.926a(c)(iii).

20.    The ALJ acknowledged that Plaintiff has experienced "some limitation in social functioning." Tr. at 18. The ALJ explained that "Xavier has had some behavioral problems . . . .

---

[6]    The following exchange took place at the hearing on October 29, 1998:
Dr. Lam:    [Xavier] started out having some school problems and it seemed like he was detained also. I'm not sure . . . whether [his detention] was from base knowledge or from him, but I guess he [. . .]
WIT:    Can I say something[?]
ALJ:    Well, no. Let's take the doctor's testimony.
Tr. at 223. The ALJ never asked Ms. Espinosa to explain why Xavier was held back. Nor did the ALJ explore the reasons for Xavier's detention when the subject arose a second time during Dr. Lam's testimony. Tr. at 227. Indeed, the ALJ never revisited Ms. Espinosa's request to "say something."

[and][i]n the past . . . has fought with his peers and his sister."[7] Tr. at 18. However, the ALJ found that "[t]hese problems have improved with treatment (Ex. 15F) [tr. at 181]. [Xavier] receives medication and counseling to help him . . . . [and] his behavior and ability to relate to others has improved with medication." Tr. at 18. The ALJ concluded that "Xavier has a less than marked impairment in social functioning." Id.

21. Defendant pointed out that "[t]he evidence [i]s mixed on this subject." Def.'s Br. at 7. However, there is no indication from the ALJ's decision that any evidence other than Xavier's history of fighting was considered in reaching a finding regarding Plaintiff's degree of impairment in this area. For example, despite the availability of some school evaluations, the ALJ did not discuss the observations of Plaintiff's second grade and third grade teachers with regard to a variety of factors directly related to Xavier's social functioning. See Tr. at 66-68, 81-83. See 20 CFR § Pt. 404, Subpt. P, App. 1, 112.00(C)(3) ("Problems in social functioning . . . are often observed firsthand by teachers and school nurses . . . . [thus,] school records are an excellent source of information . . . and should always be sought for school-age children."). Because the ALJ failed to discuss all the relevant evidence on this issue, it is impossible for the Court to discern whether, or how, this evidence was considered in the decision-making process.

C. Personal Functioning

22. The regulations generally describe the area of personal functioning as:

[t]he ability or inability to help yourself and cooperate with others in taking care of your personal needs, health, and safety (e.g., feeding, dressing, toileting, bathing; maintaining

---

[7] This finding implies that Plaintiff no longer fights with his peers and sister. However, in a subsequent paragraph of the same opinion, the ALJ finds that Xavier "fights with his sister" at home. Tr. at 18 ¶ 5. The ALJ does not offer an explanation for this apparent contradiction.

9

personal hygiene, proper nutrition, sleep, health habits; adhering to medication or therapy regimens; following safety precautions).

20 CFR § 416.926a(c)(iii).

23.     The ALJ's discussion of this functional area consists, in its entirety, of the following:

> In the area of personal attainment Xavier has no difficulty. He is able to attend to his personal needs without difficulty. I find no limitation in this area.

Tr. at 18. This finding similarly fails to discuss or mention any relevant evidence with regard to Xavier's personal functioning. Neither does the ALJ indicate what evidence she relied on in reaching her conclusion. Consequently, as with the areas of concentration, persistence, or pace and social functioning, the Court is unable to determine how, and whether, the ALJ considered the evidence relevant to this functional area.

24.     The Court's role "on review is to determine whether the [ALJ's] decision is supported by substantial evidence." Trimiar v. Sullivan, 966 F.2d 1326, 1328 (10th Cir. 1992) (citing Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir.1987)) (citation omitted). It is not the Court's role to "reweigh the evidence or try the issues de novo or substitute its judgment for that of the [ALJ]." Trimiar, 966 F.2d at 1328. However, the ALJ is required to discuss the evidence and explain why she found that the claimant was not disabled; an ALJ may not merely state a summary conclusion that claimant's impairments did not meet or equal any listed impairment. Clifton v. Chater, 79 F.3d 1007, 1008 (10th Cir. 1996). Conclusory findings without explanation and analysis have little or no value. Colon v. Apfel, 133 F.Supp.2d 330, 343 (S.D.N.Y. 2001) ("Findings are not rationally based on the evidence when they do not fairly relate to the credible evidence."). I find that the ALJ's decision in this matter fails to provide the Court a sufficient

10

basis from which to determine whether substantial evidence supports the ALJ's findings. Therefore, this matter should be remanded for the ALJ to set out specific findings and the reasons for accepting or rejecting evidence at step three.

**Recommended Disposition**

I recommend that Plaintiff's Motion to Reverse and Remand for Award of Benefits, or in the Alternative, to Remand for Rehearing **[Doc. 9]** be granted in part. This matter should be remanded for a rehearing and further proceedings consistent with this opinion. On remand, the Commissioner should develop and consider all the relevant evidence and provide findings that discuss the relevant evidence as it relates to Plaintiff's impairment.

Timely objections to the foregoing proposed findings and recommended disposition may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE